IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:19-CR-64-PLR-HBG |
| LUCKY J. CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on August 12, 2019, for an evidentiary hearing on the Motion to Suppress and Memorandum in Support Thereof [Doc. 25], filed by Defendant Lucky Clark ("Clark"). Assistant United States Attorney Brent Jones appeared on behalf of the Government. Attorney Randall Reagan appeared on behalf of Defendant Lucky Clark. Assistant Federal Defender Ben Sharp represented Defendant Dominque McKenzie. Both Defendants were also present.[1] At the conclusion of the hearing, the Defendant Clark requested the opportunity to file a post-hearing brief. The Defendant Clark filed a post-hearing brief [Doc. 43] on September 17, 2019. The Court then took the matter under advisement.

This is a straight forward case of a police officer making an investigatory stop of the defendant Clark, which then turned into a probable cause search of Clark's vehicle based on the active odor of marijuana on Clark and coming from his vehicle.

---

[1] Attorney Allen Schwartz, who represents the Defendant Clark on state charges arising out of this matter, sat at counsel table with Attorney Reagan, with the Court's permission.

Based upon the testimony and exhibits presented at the hearing, the arguments of the parties, and the relevant case law, the Court finds that the officer properly stopped the Defendant Clark. At that time, the Defendant was not in custody and, thus, the *Miranda* warnings were not required. Shortly, thereafter, the officer had probable cause to search Clark's vehicle, based on the active odor of marijuana coming from Clark's person and from the car. Thus, the Court finds no basis to suppress the evidence gained as a result of the stop and the vehicle search. In addition, the Court finds that no statements made by Clark, prior to him being Mirandized, should be suppressed.

## I.     POSTIONS OF THE PARTIES

In his Motion, the Defendant Clark asserts that he went to the U.T. Medical Center to "see his friend who had been shot." Clark alleges that Officer Bailey stopped him in the parking garage of the U.T. Medical Center, and without any legal basis, arrested him and then questioned him without advising Clark of his *Miranda* rights. Clark submits that his seizure and arrest were based on impermissible racial profiling or "questionable criteria". Clark claims that after his arrest, his vehicle was searched without probable cause or consent [Doc. 25].

In response to the Motion, the Government alleges that Officer Bailey had reasonable suspicion, based on vehicle information from law enforcement about a shooting, and based on his personal observation of Clark's behavior, to conduct an investigatory stop. Whereupon, Officer Bailey detected a strong odor of marijuana coming from Clark and Clark's vehicle, along with observation of nervous behavior by Clark, giving Officer Bailey probable cause to search the vehicle. Over half a pound of marijuana and a firearm were found in Clark's vehicle. Finally, the Government asserts that there is no evidence of racial profiling or questionable criteria in this case. [Doc. 33].

In his post-hearing brief, Clark concedes that "the plain smell of marijuana has generally been upheld in most jurisdictions as enough to meet probable cause standards" for a search. [Doc. 43, p. 11]. Clark, argues, however, that hemp is now legal in Tennessee, and moreover, that the smell of hemp can be mistaken for the smell of marijuana. In addition, Clark argues that officers at the scene in the parking garage violated Clark's *Miranda* rights, because they "pressured Mr. Clark to admit to having smoked marijuana earlier that day and to admit that there was a gun and possible marijuana in his car" prior to the vehicle search. [Doc. 43, p. 14].

## II.  SUMMARY OF TESTIMONY AND FINDINGS OF FACT

The Government presented the testimony of Officer Jonathan Bailey ("Bailey") of the Blount County Sheriff's Office ("BCSO"). Officer Bailey testified that he has worked as a patrol deputy for the BCSO since March of 2019, and before that, he worked for the University of Tennessee Medical Center ("U.T. Medical Center"), as a security officer. [Tr. 6].[2] Bailey earned a state certification and license, received training through the Knox County Sheriff's Office as a security officer at U.T. Medical Center, and had arrest authority in that job. [Tr. 10].

The Court fully credits the testimony of Officer Bailey, finding that it was consistent and unimpeached. Accordingly, Bailey testified, and the Court **FINDS** as follows:

On February 27, 2019, Bailey was on night patrol duty in his capacity as a security officer at U.T. Medical Center. A gunshot victim came into the emergency department. The Knoxville Police Department ("KPD") advised U.T. Medical Center Security that the shooters were at large. Bailey testified that the only description of the suspects provided by KPD was "a black sedan." Bailey testified that, pursuant to normal procedure, he and other security officers were stationed at

---

[2] The transcript [Doc. 44] of the August 12, 2019 evidentiary hearing was filed on September 27, 2019.

the emergency department, and in the parking garage near the emergency department, in case the shooters followed the victim to the U.T. Medical Center. [Tr. 11].

Bailey testified that while he was on patrol in the parking garage, he saw a black sedan enter the garage. He then saw a male walking down the garage ramp toward the garage exit. Bailey testified that the male looked in the direction of law enforcement officers outside the emergency department, and then "stopped, turned, and walked hastily back up the ramp to where I saw him get into the same black sedan that I witnessed pull into the garage." Bailey identified the male as the Defendant Clark. [Tr. 11-12].

Bailey drove past the subject black sedan, stopped and got out. Clark turned off the black sedan's engine, got out, and locked the sedan's doors. Bailey asked Clark if he was there to visit someone, and Clark said, "Yeah, I was here to visit somebody that got shot." Clark also told Bailey that shooting victim was his "brother". Clark kept looking back toward the driver's seat of the sedan, "looking up and down the ramp", and was "fidgeting with his pocket." Bailey told Clark to keep his hands out of his pocket. [Tr. 12-13].

Bailey also testified that he smelled an "active odor of marijuana" coming from the subject black sedan, which had a partially opened window at the driver's door, and from the area of Clark's person. Bailey described Clark's behavior as "nervous." Bailey then conducted a pat-down to check for weapons, for officer safety, and Bailey advised Clark "not to move, that he was going to be detained."[3] [Tr. 14-15].

---

[3] Next, K9 Officer Matt Bloom arrived, the canine sniffed the vehicle, and gave a positive alert. The Government, however, announced that it was not relying on the canine alert as any basis for the claimed probable cause for the subsequent vehicle search [Tr. 15-16]. Therefore, the canine alert will not be considered in the Court's analysis.

4

After other officers arrived, Officer Bailey conducted a search of the black sedan. He found a loaded handgun under the driver's seat, U.S. currency, and a baggy of marijuana. [Tr. 17]. Bailey also found a larger bag of marijuana, over half a pound, on the rear passenger floorboard. [Tr. 18] [Ex. 1].

On cross-examination, Bailey testified that the initial information from KPD was that the vehicle possibly involved in the shooting was a black sedan, but that no model was given or any description of the occupants. [Tr. 21]. Nor was Bailey told that the sedan or anyone involved in the shooting was actually on the U.T. Medical Center campus. [Tr. 23] [Ex. 1].

During Bailey's encounter with Clark, Bailey placed Clark in handcuffs. Clark was detained and not free to leave, based on the active odor of marijuana. [Doc. 43]. Clark gave Bailey his name and date of birth. Clark did not have a photo identification. Bailey ran the name through dispatch, which reported that there were no warrants outstanding on Clark. [Tr. 41-43].

Prior to searching the vehicle, Bailey asked Clark if he had any illegal firearms or narcotics in the vehicle. Bailey did not give *Miranda* warnings to Clark, or hear anyone else do so. [Tr. 45]. Clark did not consent to the vehicle search. [Tr. 47]. Officer Bailey did not get a search warrant to search the vehicle. [Doc. 47].

On re-direct examination, Bailey testified that he saw Clark enter the subject black sedan after he saw Clark observe law enforcement and then "stop, hastily turn, and walk rapidly back up the ramp." [Tr. 50]. He also testified that he smelled marijuana "once [Clark] got out of the black sedan." [Tr. 50].

### III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S.

Const. amend IV. The Fifth Amendment provides the right not to incriminate oneself. U.S. Const. amend V. Defendant Clark argues that his rights under the Fourth Amendment were violated because Officer Baily lacked a legal basis to stop and detain him, and because Officer Bailey lacked probable cause to search Clark's vehicle. Clark also contends that Officer Bailey violated his Fifth Amendment protection against self-incrimination by questioning him without advising him of his *Miranda* warnings. The Court examines each of these issues in turn.

### A. Legal Basis To Stop And Detain Clark

Clark argues that Officer Bailey illegally seized Clark's car by blocking it in with his patrol vehicle. Clark argues that when Bailey seized Clark's car the only information which Bailey had about shooting suspects was that KPD was looking for a black sedan [Doc. 43, p. 6]. Clark argues that Baily could not provide "articulable facts" to support the stop of Clark. [Doc. 43, p. 7].

The Court disagrees. Officer Bailey testified, and the Court found, the following: Bailey received information from KPD that a gunshot victim had arrived at the U.T. Medical Center Emergency Department; Bailey received information from KPD that the shooters were at large, and KPD was looking for a black sedan in relation to the shooting; Bailey knew that persons involved in the shooting might follow the victim onto the U.T. Medical Center Campus; following normal procedure in such situation, Bailey was on patrol checking out a parked black sedan in the parking garage near the emergency department; Bailey observed a black sedan enter the garage; Bailey then observed Clark walk part way down a parking ramp toward the emergency department; Bailey saw Clark notice the presence of law enforcement, stop, turn and walk "hastily" back up the ramp; and Bailey then saw Clerk get into the same black sedan which he had seen just enter the garage.

6

"[A] brief investigative stop, or *Terry* stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 12 (1989) & *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).  Assessing whether an investigatory stop comports with the Fourth Amendment is a two-step process:  First, the Court must determine whether the officer has a reasonable basis for the stop by looking to whether the officer had reasonable suspicion supported by specific and articulable facts. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). Second, if the stop was proper at its inception, the Court must examine whether the intrusiveness of the stop was reasonable related to the situation by reviewing the reasonableness of the officer's actions in the context of the presenting circumstances. *Id.*

A court reviewing the legality of an investigative stop must consider the totality of the circumstances in evaluating the presence of reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Martin*, 289 F.3d at 398. Although an officer may not rely upon a mere hunch to support a *Terry* stop, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. Depending upon the circumstances giving rise to the investigative stop, the officer's reasonable suspicion permits the officer to detain the suspect while asking a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions. *Martin*, 289 F.3d at 396. If the suspect's answers fail to supply the officer with probable cause to arrest, then the officer must release the suspect. *Id.* at 397.

The Court finds that Officer Bailey lawfully stopped the Defendant Clark. Officer Bailey points to specific and articulable facts justifying a reasonable suspicion that the suspect, Clark, had

7

been involved in criminal activity. Based upon his personal observations, Officer Bailey had reason to suspect that Clark should be questioned about his possible involvement in the shooting. The Court finds no evidence of racial profiling or "questionable criteria" relative to the *Terry* stop of Clark.

Finding that the stop of Clark's vehicle, and the questioning of Clark, was proper at its inception, the Court next turns to whether the scope of the stop (its duration and intrusiveness) was reasonable in light of the circumstances. An officer with reasonable suspicion to stop and detain an individual may ask a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions. *Martin* 289 F.3d at 396. The duration of the stop is measured in light of whether the officer "diligently pursued a means of investigation that was likely to confirm or dispel [his or her] suspicions quickly[.]" *United States v. Sharpe*, 470 U.S. 675, 687 (1985) (assessing the reasonableness of a *Terry* stop). The Court finds that there were no illegalities with the investigatory stop.

### B. Probable Cause To Search The Vehicle

In this case, Officer Bailey asked Clark questions about his purpose for being in the parking garage. Almost, immediately, Officer Bailey detected the odor of marijuana coming from Clark's vehicle, whereupon he had probable cause to search it. The Court finds that the scope of the stop of the Defendant was reasonable in both length and intrusiveness.

The automobile exception to the Fourth Amendment warrant requirement is applicable in this case. The mobility of an automobile as well as the reduced exception of privacy stemming from the fact that automobiles are highly regulated give rise to the automobile exception. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). "If there is probable cause to believe that a vehicle contains evidence of criminal activity," an officer may search "any area of the vehicle in

8

which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (setting out the automobile exception and citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)); *United States v. Man*, 999 F.2d 966, 969 (6th Cir.) (when "police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any contents located within in"), *cert. denied*, 410 U.S. 999 (1993). As long as the vehicle is mobile and law enforcement had probable cause to believe that it contains evidence of the crime, no exigent circumstances need be present. *Labron*, 518 U.S. 940; *see Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002).

The possession and use of marijuana is illegal in Tennessee and under Federal law. 21 U.S.C. § 812(c). The active odor of marijuana gave officer Bailey probable cause to search the vehicle. Defendant's argument that hemp and marijuana are "the same plant," and that hemp is legal in Tennessee, does not change the fact that Officer Bailey testified that he smelled marijuana.

### C. Miranda Warnings

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *see also United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Salvo*, 133 F.3d at 948.

As stated above, law enforcement officers must advise a person of the *Miranda* warnings, when the person is questioned while in police custody. *Miranda*, 384 U.S. at 478-79; *see also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) (holding that the obligation to

administer *Miranda* warnings only arises if there has been "such a restriction on a person's freedom as to render him 'in custody'"). In the instant case, Officer Bailey questioned the Defendant Clark to determine whether he was involved in criminal activity, specifically possession of illegal drugs or firearms. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (defining "interrogation" under *Miranda* "express questioning [by the police] or its functional equivalent[,]" which is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect"). The issue in this case is whether Clark was in custody for purposes of the Fifth Amendment at the time Officer Bailey questioned him.

To determine whether an individual is in custody for purposes of receiving the *Miranda* warnings, the Court examines the totality of the circumstances to assess how a reasonable person in that situation would have interpreted the situation. *Stansbury v. California*, 511 U.S. 318, 323 (1994) (holding that the court looks to "the objective circumstances of the interrogation, not on the subjective views" of the questioning officers or the defendant); *Salvo*, 133 F.3d at 948. In other words, would a reasonable individual in the same position as the Defendants have felt free to leave. *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). Ultimately, the Court must decide "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Knox*, 839 F.2d 285, 291 (6th Cir. 1988) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted)); *Swanson*, 341 F.3d at 529.

In the instant case, the Defendant certainly did not have unrestrained freedom to move about,[4] nor was he free to leave as he was the subject of an investigatory detention or "*Terry* stop"

---

[4] Our appellate court has set forth several factors useful in determining whether an individual is in

10

under the Fourth Amendment. Nevertheless, an investigatory detention under the Fourth Amendment does not necessarily equate to custody under the Fifth Amendment. *Knox*, 839 F.2d at 296 (Jones, J., concurring). While acknowledging that a stop curtails the defendant's freedom of movement, the Supreme Court has held that an individual briefly detained for a routine traffic stop "is not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 437, 440 (1984). In so holding, the Court likened a traffic stop to a "*Terry* stop" and observed that "[t]he comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*." *Id.* at 440; *see also Knox*, 839 F.2d at 292 & 296 (Jones, J., concurring) (rejecting the proposition that an investigatory detention can never evolve into custodial interrogation).

Consideration of all the circumstances surrounding Clark's detention, prior to the discovery of the odor of marijuana and the drugs in Clark's vehicle, persuades the Court that he was not in custody and the *Miranda* warnings were not required. The Court finds that the location of questioning was not hostile or coercive. Defendant Clark was questioned in the parking garage. Moreover, the circumstances of the questioning were not intimidating or coercive. Although the Defendant Clark could not leave while officers investigated drug possession, his detention was

---

custody:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*Salvo*, 133 F.3d at 950; *see also Swanson*, 341 F.3d at 529.

certainly not "of the degree associated with a formal arrest." *See Knox*, 839 F.2d at 291. Accordingly, the Court finds that the *Miranda* warnings were not required during the Defendants' investigatory detention and the search of Clark's vehicle.

## IV. CONCLUSION

After carefully considering the filings and arguments, the evidence, and the relevant legal authorities, the Court finds no Fourth Amendment violation occurred in this case, because the police officer made a lawful investigatory stop, which then turned into a probable cause search of Clark's vehicle based on the active odor of marijuana on Clark and coming from his vehicle. Nor were Clark's Fifth Amendment rights violated by the investigatory questions asked of him prior to the search of his vehicle. Accordingly, the undersigned respectfully **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [**Doc. 25**] be denied.[5]

                                            Respectfully submitted,

                                            _____
                                            United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).